UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRANDON GORDON, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 14-7495 |
| v. | : | |
| | | OPINION |
| ZACHARY DAILEY and LAB RAT DATA PROCESSING, LLC, | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim [Doc. 28 / 82].

The Amended Complaint asserts eight counts: (1) violation of 17 C.F.R. § 240.10(b)(5) (federal securities fraud); (2) violation of New Jersey Uniform Securities Law; (3) violation of Florida Securities and Investor Protection Act (asserted by Plaintiff Gordon only); (4) common law fraud; (5) negligent misrepresentation; (6) fraudulent inducement; (7) breach of contract; and (8) unjust enrichment.

The Amended Complaint asserts that this Court's jurisdiction rests on 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

Upon review of the Amended Complaint, the Court is not satisfied that it has subject matter jurisdiction.

This suit involves Bitcoin transactions. The Amended Complaint, however, does not explain what Bitcoins are, beyond the allegations that Bitcoins are some form of

1

virtual currency.  Extrinsic sources were consulted to understand what Bitcoins are, and how they function.[1]

It is alleged that Defendant Dailey, through his LLC, "operating under the trade name LabRatMining"[2] "min[ed] for Bitcoins"-- or at least stated that it mined, or would mine, for Bitcoins.  (Amend. Compl. Ex. 1)

According to the Amended Complaint, in early July, 2013, LabRatMining formally announced on the Internet the following, in relevant part:

> LabRatMining is a company that will be operating as a mid to large scale miner of Bitcoins paying out dividends/returns to bondholders.  Each bond in the company represents a portion of the overall hashrate[3] owned and managed by LabRatMining. . . .
>
> Bond Structure—It is intended 100,000 bonds will be sold during the IPO.  These bonds represent the hashrate that these machines produce rather than the hardware themselves. . . .
>
> Dividends/Bond Value—Each bond will receive a minimum of 100MH/s* worth of mining profit in dividends/returns (all dividends are contractual returns based on investments and may simply be referred to as dividends for future purposes) on a weekly basis. . . .

---

[1]  "Bitcoin, one of the most known of virtual currencies, is an emerging technology field defined by the European Central Bank as 'unregulated, digital money, which is issued and usually controlled by its developers, and used and accepted among members of a specific virtual community.'  Unlike the U.S. dollar, Bitcoins have no physical form, they are simply computer code stored in a digital wallet.  Users can send and receive Bitcoins in a few seconds from virtually any electronic device.  Bitcoins are not legal tender, nor backed by any government or legal entity.  Like the U.S. dollar, Bitcoins have no intrinsic value and are not redeemable for other commodities.  Instead the value of Bitcoins is due to user's willingness to accept them as a method of payment.  At the time of publication, they are valued at around US $ 400 per Bitcoin.  They can be subdivided and spent down to one-hundred-millionth of their total value."  Hon. Jeffrey Davis, *What Bitcoins Are and Why Lawyers Should Care About Them*, 40 Alaska Bar Rag 6, Jan. / March 2016.

[2]  Defendant Lab Rat Data Processing, LLC, has filed for bankruptcy protection and has been administratively terminated as a Defendant to this suit.

[3]  The Amended Complaint does not define or explain "hashrate."

> . . .
>
> LabRatMining is offering bonds at far less cost to bondholders than almost all, if not all[,] bond issuers.  Some are issuing bonds at 7+BTC/GH/s whereas these bonds are being offered initially between 1 and 2 BTC/GH/s.[4]
>
> . . .
>
> - The bonds discussed above do not represent traditional bonds, but what are commonly known as PMB's or Perpetual Mining Bonds.  Another commonly used term is Mining Contracts.  These bonds are not traditional bonds as offered by publicly traded companies.  PMB's are actually private contracts with anticipated returns based on investments into the company.
>
> . . .
>
> - This is a privately held, nonpublicly traded company.  This company and the PMB's being offered are not regulated by any governmental entities including the SEC or any other agency or board.

(Amend. Compl. Ex. 1)

Nine days later, LabRatMining, in another Internet post, elaborated on the price of the bonds: "100,000 bonds will be made available to the public.  The bonds will be tiered in value beginning at 0.15BTC/bond with each consecutive 20,000 being 0.01BTC higher. . . . These prices are first come first serve, and the prices are not guaranteed to any individual purchaser." (Amend. Compl. Ex. 2)

The post further stated: "Bitcoin Disclaimer: These bonds are being purchased in Bitcoin, and all dividends are paid in Bitcoin.  The purchaser understands what Bitcoins are and that they are not guaranteed to maintain any future value or even any value at all.  LabRatMining does not guarantee any such values, nor does it guarantee the future success or stability of Bitcoins.  These bonds are totally dependent upon the value of

---

[4] The Amended Complaint abbreviates Bitcoin as BTC.  It is not clear what "BTC/GH/s" means.

Bitcoins and are not otherwise secured by any asset of the company or the company itself." (Amend. Comp. Ex. 2)

All twelve Plaintiffs are alleged to have "purchased" bonds. Based on the above, the Court presumes all transactions occurred in Bitcoins. The Amended Complaint does not allege the price each Plaintiff paid, only the number of bonds purchased:

| Plaintiff | Number of Bonds |
| --- | --- |
| Gordon | 1669[5] |
| Green | 1581 |
| Vondrak | 1124 |
| Lobb | 674.333 |
| McDonald | 456 |
| Piper | 95 |
| Galido | 701 |
| Boehler | 500 |
| Fisher-Levine | 2862 |
| Flachsbart | 114 |
| Kolonusz | 2000 |
| Henderson | 4427 |

(Amend. Compl. ¶¶ 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51)

The Amended Complaint does not state whether Defendants ever paid any Plaintiff "dividends" as promised.

---

[5] Plaintiff Gordon is also alleged to have "pledged" 60 Bitcoins "in return for" 600 "bonds in the company." (Amend. Compl. ¶29, Exs. 5-6)

4

Plaintiffs have demanded that Defendants "rescind the unlawful transactions at issue and to return the monies that Defendants fraudulently obtained from Plaintiffs" (Amend. Compl. ¶ 56), but Defendants have refused.

Subject Matter Jurisdiction Standard

"[F]ederal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte.*" Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995), see also Fed. R. Civ. P. 12(h)(3) ("whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added); Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003) ("First, because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977). A necessary corollary is that the court can raise *sua sponte* subject-matter jurisdiction concerns.").

"A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction." Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

The lack of clarity of essential facts requires the review of the Amended Complaint to determine whether the Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and or 28 U.S.C. § 1332 (diversity of citizenship).

<u>Federal Question</u>

The federal question statute provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

The issue is whether Count One of the Amended Complaint (the only purported federal claim) "arise[s] under" the federal securities laws—that is, are the alleged "bonds" in LabRatMining "securities"?

In conclusory fashion, Plaintiffs assert that they are, <u>see</u>, <u>e.g.</u>, Amended Complaint, ¶ 52(c) ("the bonds issued by LRM constituted 'securities' as defined by the Securities Act of 1933"), but the facts alleged seem to suggest otherwise.

First, Defendants allegedly represented that: (1) the bonds were not regulated by the SEC; and (2) a lawyer had advised Defendants as such. While the Amended Complaint states in conclusory fashion that (1) was false, the Amended Complaint does not explain *how* it was false. That is, the Amended Complaint fails to set forth the SEC's legal authority to regulate the "bonds" Defendants allegedly offered for sale.

Moreover, it does not appear that the "bonds" Defendants allegedly sold were "bonds" as that term is traditionally used in the securities laws (i.e., debt obligations). Indeed, Defendants stated, "[t]he bonds . . . do not represent traditional bonds, but what are commonly known as PMB's or Perpetual Mining Bonds. Another commonly used term is Mining Contracts. These bonds are not traditional bonds as offered by publicly traded companies. PMB's are actually private contracts with anticipated returns based on investments into the company." (Amend. Compl. Ex. 1, 2)

Thus, it is not at all clear whether the "bonds" Defendants allegedly sold were-- as a legal matter-- bonds, stocks, or something else entirely. <u>See generally,</u> <u>Rossi v.</u>

Quarmley, 604 F. App'x 171, 173 (3d Cir. 2015) ("Section 2(1) of the Securities Act of 1933 defines 'security' and includes several catch-all types of securities, including 'investment contract[s].' . . . An investment contract is 'a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.' SEC v. W.J. Howey Co., 328 U.S. 293, 298—99 (1946).").

As a result, the Amended Complaint does not adequately plead facts supporting a conclusion that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### Diversity of Citizenship—Amount in Controversy

The diversity statute provides, in relevant part, "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.[6]

The Court has no way of determining whether the matter in controversy exceeds $75,000 because the Amended Complaint does not allege a dollar value associated with a Bitcoin at any given time, much less during the relevant period(s) of time.

Basically, the Amended Complaint does not allege how many Bitcoins each Plaintiff paid for the bonds; or whether, consistent with Defendants' alleged promise, Defendants ever paid any Plaintiff weekly "dividends."

Thus, the Amended Complaint fails to allege sufficient facts which are essential for this Court to be satisfied that the amount in controversy requirement has been met.

---

[6] The Amended Complaint sufficiently alleges complete diversity of citizenship; Defendants are alleged to be New Jersey citizens (Amend. Compl. ¶¶ 14-15), and none of the Plaintiffs are alleged to be New Jersey citizens (Amend. Compl. ¶¶ 2-13).

## Conclusion

For the reasons stated above, the Motion to Dismiss will be dismissed without prejudice, and Plaintiffs will be ordered to show cause why this case should not be dismissed for lack of subject matter jurisdiction. An Order accompanies this Opinion.


Dated: June 20, 2016                    　　s/ Joseph H. Rodriguez
                                        Joseph H. Rodriguez, U.S.D.J.